1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   JANET DAVIS,                              ) Case No.: 1:14-cv-01632 - JLT
                                               )
12              Plaintiff,                      ) ORDER REMANDING THE ACTION PURSUANT
                                               ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13         v.                                   )
                                               ) ORDER DIRECTING ENTRY OF JUDGMENT IN
14   CAROLYN W. COLVIN,                         ) FAVOR OF PLAINTIFF JANET DAVIS AND
     Acting Commissioner of Social Security,    ) AGAINST DEFENDANT CAROLYN COLVIN,
15                                              ) ACTING COMMISSIONER OF SOCIAL
                Defendant.                       ) SECURITY
16                                              )
                                               )
17   _____ )

18         Plaintiff Janet Davis asserts she is entitled to benefits under the Social Security Act, and

19   requests judicial review of the administrative decision to deny her applications for benefits.  Because

20   the administrative law judge erred in evaluating the medical record, the administrative decision is

21   **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

22                          <u>**BACKGROUND**</u>[1]

23         In 2009, Plaintiff filed several applications for supplementary security income, disability

24   insurance benefits, and widow's insurance benefits under the Social Security Act, alleging disability

25   beginning December 31, 205.  (AR at 83-100, 307)  The Social Security administration denied the

26   applications at the initial level and upon reconsideration.  (*Id.* at 47-56)  Plaintiff requested a hearing,

27

28         _____
           [1] Citations to the Administrative Record are designated as "AR," followed by the appropriate the page number.

                                              1

and testified before an ALJ on May 4, 2011.  (*Id.* at 307)  The ALJ concluded Plaintiff was not disabled, and issued an order denying benefits on September 6, 2011.  (*Id.* at 304-17)

Plaintiff filed a request for review of the decision with the Appeals Council, which granted her request on November 28, 2012.  (AR at 326-29)  The Appeals Council vacated the decision and remanded the matter.  The Appeals Council instructed the ALJ to determine whether Plaintiff was continuing to work and whether the work was substantial gainful activity; to evaluate Plaintiff's mental impairments, including limitations with social functioning, concentration, persistence and pace; to consider the third party function report provided by Plaintiff's mother; and consider additional medical evidence related to her ability to her physical residual functional capacity.  (*Id.*)  After receiving the remanded instructions, the ALJ held a second hearing on September 5, 2013.  (*Id.* at 17)

The ALJ again determined Plaintiff was not disabled, and issued an order denying benefits on November 22, 2013.  (AR at 17-33)  The Appeals Council denied Plaintiff's request for review on August 22, 2014.  (*Id.* at 7-9)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

///

1

**DISABILITY BENEFITS**

2

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

3

engage in substantial gainful activity due to a medically determinable physical or mental impairment

4

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.

5

§ 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

6

7

8

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

9

10

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

11

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

12

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

13

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

14

**ADMINISTRATIVE DETERMINATION**

15

To achieve uniform decisions, the Commissioner established a sequential five-step process for

16

evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires

17

the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of

18

alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the

19

listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had

20

the residual functional capacity to perform to past relevant work or (5) the ability to perform other work

21

existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial

22

and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

23

**A.      Medical Opinions**

24

Dr. Prithvi Shankar conducted a consultative internal medicine examination of Plaintiff on May

25

28, 2009. (AR at 162-63) Plaintiff reported she began having back pain in 2005, "after she was struck

26

by another person." (*Id.* at 162) In addition, Plaintiff described neck pain that "radiate[d] occasionally

27

down her arm causing numbness and tingling." (*Id.*) Further, Plaintiff told Dr. Shankar that "in 2005-

28

2006 she had a significant mental breakdown and as a result has had increased anxiety." (*Id.*) Dr.

1   Shankar noted Plaintiff's medical history was "[s]ignificant for bipolar disorder, migraine headaches, as

2   well as cervical pain." (*Id.*)  Dr. Shankar determined Plaintiff had "good" range of motion in her upper

3   and lower extremities, and her "[s]ensory and motor function [were] also grossly normal." (*Id.* at 163)

4   According to Dr. Shankar, Plaintiff had a full range of motion in her cervical spine, but demonstrated

5   "some degree of spasm in the shoulder muscles." (*Id.*)  Dr. Shankar opined Plaintiff did not have any

6   limitations sitting, standing, walking, or performing postural activities. (*Id.*)  Dr. Shankar "[did] not see

7   any significant disability in terms of her functional capacity and thought process." (*Id.*)

8         Dr. Monolito Castillo performed a consultative psychiatric evaluation of Plaintiff on July 19,

9   2009. (AR at 164)  Plaintiff said she had "been experiencing depression for a number of years," which

10  she attributed to abuse, "a number of health problems," and the death of her husband. (*Id.*)  Also, Dr.

11  Castillo noted:

12        She has been receiving psychiatric treatment for a number of years and has been taking
          medications off and on since she was in her 30s.  She became more consistent in taking
13        her medications in 2003.  Despite this, she remains depressed.  She was even hospitalized
          in 2006 for her depression.  When I explored her symptoms, she reported having poor
14        sleep.  She also has been very forgetful and has difficulty concentrating.  Her appetite
          remains good though.  She denies experiencing nightmares and flashbacks of her past
15        trauma.  She also denies a having a history of mania.

16  (*Id.*)  Plaintiff also reported she had a history of abusing alcohol, marijuana, and crank, and that she was

17  incarcerated twice for driving under the influence. (*Id.* at 165)  She told Dr. Castillo that she saw

18  flowers, and had "the sensation of someone trying to get into her body." (*Id.* at 166)

19        Dr. Castillo observed that Plaintiff's "[s]ocial interaction…was normal," and she "had good eye

20  contact." (AR at 165)  Dr. Castillo found Plaintiff's "attention span was normal" and her "memory was

21  fair as she was able to recall three unrelated objects immediately and two objects five minutes later."

22  (*Id.*)  According to Dr. Castillo, Plaintiff "was not exhibiting florid, nor subtle psychotic behavior

23  during [the] interview." (*Id.* at 166)  He diagnosed Plaintiff with Dysthymic Disorder; Psychotic

24  Disorder, Not Otherwise Specified; and Polysubstance Dependence, in partial remission. (*Id.*)  He

25  opined Plaintiff "did well on assessment," and he gave Plaintiff a GAF score of 74.[2] (*Id.*)  Dr. Castillo

26

27        [2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and
    occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association,
28  *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  With a GAF score between 71-80, "[i]f
    symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating

concluded he was "unable to identify any significant mental limitations at present."  (*Id.*)

On July 31, 2009, Dr. Greg Ikawa completed a psychiatric review technique form.  (AR at 173)  He noted Plaintiff suffered from psychotic and affective disorders. (*Id.*)  Dr. Ikawa determined Plaintiff did not have any limitations in her activities of daily living; had no difficulty with social functioning; and no difficulty in maintaining concentration, persistence, or pace.  (*Id.* at 181)  Dr. Ikawa concluded Plaintiff's mental impairments were not severe.  (*Id.* at 173)

After the Appeals Council remanded Plaintiff's applications for further proceedings, Dr. Paul Martin conducted a psychological evaluation on February 2, 2013.  (AR at 449-51)  Dr. Martin noted:

> The claimant reported that in 2005, she had a slip and fall which resulted in a skull fracture.  She reported having some short term memory loss, vocabulary difficulties, word finding problems, and headaches ever since the accident.  She reported that she has some anxiety and depression as well.  She described her anxiety as a 7/10 and her depression as 5/10.  She had one seizure after her skull fracture, but this has not recurred.  The claimant is endorsing numerous symptoms of anxiety and has had some panic attacks in the past.

(*Id.*)  Plaintiff reported that she "last worked in 2011," and "stopped working because of her medical condition."  (*Id.* at 450)  She reported she had "a history of alcohol and marijuana use" and was on probation for a DUI.  (*Id.*)  Plaintiff denied having any hallucinations or delusions.  (*Id.*)

Dr. Martin observed that Plaintiff "presented in a friendly but somewhat anxious manner and was cooperative during the evaluation."  (AR at 450)  In addition, Dr. Martin noted Plaintiff's "expressive and receptive language skills were adequate for the purposes of the evaluation."  (*Id.*)  He found Plaintiff's attention was "fair" because she recalled "5 digits forward / 4 digits in reverse," and her memory was "adequate" because she "[r]ecalled 2 out of 3 words after a brief delay."  (*Id.*)  According to Dr. Martin, Plaintiff's thought process was "[l]inear and goal directed," and her thought content was normal.  (*Id.*)  Dr. Martin diagnosed Plaintiff with Generalized Anxiety Disorder and Post Concussive Syndrome, and gave her a GAF score of 60.[3]  (*Id.* at 451)  Dr. Martin concluded Plaintiff's ability to "understand, remember, and carry out simple instructions" was unimpaired.  (*Id.*)  He opined

---

after family argument); no more than slight impairment in social, occupational, or school functioning..." *Id.*

[3] A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* at 34.

Plaintiff had a "Mildly Impaired" ability "to understand, remember, and carry out detailed and complex instructions;" to maintain attention and pace throughout the evaluation; and "to interact with the public, supervisors, and coworkers in a work-setting." (*Id.*)  Further, Dr. Martin believed Plaintiff was "Moderately Impaired" with the "[a]bility to maintain pace and persistence throughout the evaluation." (*Id.*)

The same date, Dr. Martin completed a checklist form entitled "Medical Source Statement of Ability To Do Work-Related Activities (Mental)." (AR at 446-48)  Dr. Martin indicated Plaintiff had "mild" limitations with her ability to understand, remember, and carry out simple instructions. (*Id.* at 446)  He indicated Plaintiff had a "marked" limitation— defined as "a serious limitation … [and] a substantial loss in the ability to effectively function"— with the ability to understand, remember, and carry out complex instructions. (*Id.*)  Dr. Martin believed Plaintiff also had "marked" limitations with "[t]he ability to make judgments on complex work-related decisions" and "respond[ing] appropriately to usual work situations and to changes in a routine work setting." (*Id.* at 446-47)  Further, Dr. Martin opined Plaintiff had moderate limitations with interacting with the public, supervisors, and co-workers. (*Id.* at 447)

**B.     Administrative Hearing Testimony**[4]

Plaintiff testified before the ALJ at a hearing on September 5, 2013. (AR at 573)  She reported that she was unable to work due to pain and "confusement." (*Id.* at 576)  Plaintiff said "most" of her pain was "behind [her] left eye." (*Id.*)  She stated she also suffered from pain in her neck, back, and legs. (*Id.* at 583, 586)  Further, Plaintiff reported that she was "very forgetful" and unable to "remember much from day to day." (*Id.* at 576-77)

She reported she last worked "three works, four weeks" in 2011 at a food processing plant canning peaches. (AR at 581)  Plaintiff reported that it was seasonal work, but she believed she would not have been able to work there for a longer period of time. (*Id.* at 582)  She explained that she had to stand for longer than she felt than she was able, and she did not have an opportunity to sit on a stool.

---

[4] The ALJ found Plaintiff's subjective complaints lacked credibility, and Plaintiff does not challenge this finding, or the ALJ's reasons given to support the conclusion.  Accordingly, the testimony is summarized only briefly to provide a context for her alleged impairments and the ALJ's findings.

6

(*Id.* at 583)  In addition, Plaintiff reported she had "weakness" in her right hand due to carpal tunnel, for which she wore a brace while working.  (*Id.* at 591-92)

## C.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity after the alleged onset date of December 31, 2005.  (AR at 21)  Second, the ALJ found Plaintiff "has the following medically severe combination of impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the hands and knees, carpal tunnel syndrome status post left sided release surgery, migraine headaches, depression, and anxiety."  (*Id.*)  At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment.  (*Id.* at 21-22)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b): she cannot forcefully push or pull more than frequently with either arm, or operate controls forcefully more than frequently with either foot.  She [can] frequently climb, balance, stoop, kneel, crouch, and crawl. She can only occasionally reach overhead, but she can frequently reach in all other directions, frequently handle, frequently finger, and frequently feel with both upper extremities.  The claimant can have no more than occasional face-to-face contact with the general public; and the claimant is no more than occasionally able to understand, remember, and carry out complex or detailed job instructions.

(*Id.* at 24) With this residual functional capacity, the ALJ found Plaintiff was able to work "jobs that exist in significant numbers in the national economy."  (*Id.* at 31)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 32)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ erred by applying the presumption of continuing non-disability, evaluating the medical evidence, and relying upon the Medical Vocational Rules.  (Doc. 22 at 13-18) On the other hand, Defendant contends the ALJ's decision is "free from legal error" and should be affirmed by the Court.  (Doc. 23 at 16; *see generally* Doc. 23 at 9-16)

## A.      Presumption of Continuing Non-Disability

The Ninth Circuit has determined that a presumption of continuing non-disability may be applied when a claimant's security income application was previously denied by an ALJ. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  In general, "an ALJ's finding that a claimant is not disabled 'creates a presumption that the claimant continued to be able to work after that date.'" *Lester*

*v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (quoting *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985)).  However, the presumption does not apply "if there are 'changed circumstances.'"  *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985).  The presumption may not be applied when the "medical or psychiatric condition has worsened," or "the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." *Id.* (citing *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)).  The Ninth Circuit explains that the burden of proof is on the claimant to "prove 'changed circumstances' indicating a greater disability."  *Chavez*, 884 F.2d at 693.

Here, the ALJ noted a prior administrative law judge determined Plaintiff was not disabled as of September 17, 2007.  (AR at 18)  The ALJ found the new evidence submitted by Plaintiff "fail[ed] to demonstrate 'changed circumstances indicating a greater disability,'" and concluded "[the] claimant therefore continues to be not disabled." (*Id.*)  Plaintiff contends the application of the presumption of continuing non-disability was an error because she "changed age categories on her 50th birthday in July 2009, when she became an individual closely approaching advanced age." (Doc. 22 at 13)  In addition, Plaintiff argues "[c]hanged circumstances were also shown by the worsening of Plaintiff's existing impairments and development of new impairments." (*Id.*)  For example, Plaintiff notes she had surgery for carpal tunnel syndrome in March 2011 and "a chronic anterior ligament tear and degeneration in the medial meniscus and osteoarthritis" in August 2012.  (*Id.* at 13-14)

Defendant acknowledges the ALJ indicate the ALJ indicated he was applying the presumption of continuing non-disability, but asserts "this appears to be a typographical/inadvertent error since the ALJ clearly reconsidered the sequential evaluation process in its entirety." (Doc. 23 at 9)  Defendant contends the ALJ "assessed additional limitations" in the residual functional capacity, "including an inability to forcefully push or pull more than frequently with either arm or operate controls forcefully more than frequently with either foot, and a limitation to frequent handling, fingering, and feeling, which were above and beyond the prior RFC." (*Id.*)  According to Defendant, "Plaintiff's argument that she has additional impairments since the last decision is moot, since the ALJ already agreed and considered her application without applying any presumption of continuing nondisability."  (*Id.* at 10)

Significantly, however, the Ninth Circuit has determined an error is only harmless when it is "inconsequential to the ultimate nondisability determination."  *See Stout v. Comm'r, Soc. Sec. Admin.*,

454 F.3d 1050, 1055 (9th Cir. 2006).  As discussed below the ALJ erred in his evaluation of the medical evidence presented, which demonstrates an increase in Plaintiff's mental impairments. Consequently, the Court cannot find the error in applying the presumption of continuing nondisability is inconsequential to the ALJ's conclusion that Plaintiff is not disabled. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (an error is only harmless where the ALJ's ultimate conclusion regarding a claimant's disability is not negated).

**B.      The ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.*, 81 F.3d at 830.  When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence."  *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").  Here, Plaintiff contends the ALJ erred by rejecting portions of the opinion offered by Dr. Martin, who examined her in 2013.  (Doc. 22 at 16-17)  Because the limitations Dr. Martin

assessed were contradicted by Drs. Shankar and Castillo, the ALJ was required to identify specific and legitimate reasons for rejecting Dr. Martin's opinions.

The ALJ indicated he gave "reduced probative weight" to the opinion of Dr. Martin[5] because his "narrative opinion is internally inconsistent and his form-issued assessment contradicts [his] narrative opinion." (AR at 31) The ALJ observed:

> [Dr. Martin], who examined the claimant on February 26, 2013, gave two widely divergent medical source statements. In his narrative report, [Dr. Martin] indicated the claimant has mildly impaired ability to understand, remember, and carry out detailed and complex instructions; maintain attention and concentration throughout the evaluation; and interact with coworkers, supervisors, and the public. Somewhat contradictorily, he felt she has moderately impaired ability to maintain pace and persistence through the evaluation; endure stress throughout the evaluation; and adapt to changes in a work routine [Exhibit 17F]. However, in a form assessment completed the same day, he opined the claimant is moderately impaired in her ability to make judgments on simple work-related decisions and markedly impaired in her ability to process complex and detailed work instructions. He felt she has moderately impaired ability to interact with coworkers, supervisors, and the public and markedly impaired ability to respond appropriately to usual work situations and changes in routine work setting [Exhibit 16F].

(AR at 30) The ALJ concluded, "In comparing both statements to the evidence of record and [Dr. Martin's] evaluation report, I find the narrative opinion to be more consistent with the evidence, but cannot reconcile the inconsistencies within it." (*Id.* at 31) Thus, the opinions of Dr. Martin were given less weight by the ALJ. (*Id.*)

The Ninth Circuit has determined an ALJ may give less weight to the opinion of a physician when an ALJ finds inconsistencies in a doctor's opinions, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

---

[5] The ALJ erroneously refers to Dr. Martin as "Dr. Morgan" in explaining the weight given to his opinions and the limitations assessed. (*See* AR at 30-31)

The ALJ identified inconsistencies between the narrative report and the checklist form completed by Dr. Martin.  However, the ALJ failed to explain why he believed the limitations identified in the checklist were inconsistent with the results of Plaintiff's mental examination with Dr. Martin, or explain how the limitations were inconsistent with the medical record as a whole.  Because the ALJ did not offer more than his conclusions that the limitations were inconsistent with the examination report and the record, he fails to support the reason for giving less weight to the opinions of Dr. Martin.[6]

### C.     Remand is Appropriate in this Matter

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

---

[6] Defendant contends the ALJ also rejected Dr. Martin's opinion because it was based upon Plaintiff's subjective complaints.  (Doc. 23 at 12)  However, this assertion is not supported by the record.  Rather, at step two of the sequential evaluation the ALJ noted, "Dr. Martin's diagnosis of post concussive syndrome is based entirely on the claimant's reported symptoms and not corroborated by the record."  (AR at 28)  Because there was "no evidence of a skull fracture or concussion in the claimant's treatment notes," the ALJ concluded "there is no medically determinable impairment of post concussive syndrome."  (*Id.*)  Thus, the ALJ determined only that the diagnosis was based upon Plaintiff's subjective complaints, and did not reject any limitations on these grounds.

Moreover, the Court is constrained to review only the reasoning asserted by the ALJ, and cannot consider post hoc reasoning by Defendant, or even the evidence upon which the ALJ could have relied.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts" and finding error were the ALJ affirmed the ALJ's decision "based on evidence that the ALJ did not discuss"). The Ninth Circuit has explained that the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking," and cannot affirm on rationale that was not articulated by the ALJ.  *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009). Because the reason identified by Defendant was not articulated by the ALJ, the Court cannot find the ALJ identified specific, legitimate reasons for rejecting the opinion of Dr. Martin.

The ALJ failed to identify specific and legitimate reasons for giving less weight to the opinions of Dr. Martin related to Plaintiff's mental impairments, including her ability to understand, remember, and carry out tasks; maintain attention, concentration, and pace; interact with co-workers, supervisors and the public; and respond appropriately to changes in the workplace. The Court must remand the matter for the ALJ to re-evaluate the medical evidence because it is not clear from the record that the ALJ would be required to find Plaintiff disabled.

## CONCLUSION AND ORDER

Given the ALJ's errors in evaluating the medical evidence and applying the presumption of continuing non-disability, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate on these matters, the Court declines to address the remaining issues raised in Plaintiff's opening brief.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Janet Davis and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 30, 2016**                      **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE